UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| JOSE ANTONIO HERNANDEZ, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. TDC-13-3567 |
| DANIEL B. CHOI, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Pending before the Court is the parties' Joint Motion for Approval of Settlement. ECF No. 36. The parties assert that the Court should approve their agreed-upon settlement, consisting of back wages, liquidated damages, and attorney's fees, resolving the allegations in the Complaint arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (2012). The Court has reviewed the Motion and held a hearing by telephone on the Motion on October 30, 2014. *See* ECF No. 37. For the reasons set forth below, the Motion is GRANTED and the settlement is APPROVED.

**BACKGROUND**

On November 25, 2010, Plaintiffs Jose Antonio Hernandez and Andelino De Leon filed a Complaint against Daniel B. Choi, Pyoung R. Choi, DTI International, Inc. ("DTI"), East Greenhill, Inc., Green World Enterprises, Inc., Metro Greenfield LLC, and All-Seasons Food Corporation (collectively, "Defendants") alleging that, while working for one or more of the Defendants as grocery clerks at a Bestway Supermarket in Falls Church, Virginia, they had not received overtime pay (one and one-half times their hourly rate) for hours worked in excess of 40

hours per week, in violation of FLSA. Compl. ¶¶ 16–19, ECF No. 1. On April 23, 2014, Hernandez, De Leon, and a third plaintiff, Edgar Domingo Chitay (collectively, "Plaintiffs"), filed an Amended Complaint adding allegations that Chitay had not been paid overtime during his work as a grocery clerk for Defendants at a Bestway Supermarket in Adelphi, Maryland. Am. Compl. ¶¶ 18–27, ECF No. 18. Both the Complaint and the Amended Complaint asserted that the lawsuit was brought as a collective action under 29 U.S.C. § 216(b) on behalf of the class of potential litigants who had worked for Defendants without receiving overtime pay. *Id.* ¶¶ 29–32.

At an Initial Status Conference on June 30, 2014, the parties requested, and the Court agreed, that discovery would proceed in two phases, with a three-month first phase of discovery relating to collective action certification only, to be followed by the filing of a class certification motion. *See* Revised Scheduling Order, ECF No. 28. The second phase of discovery, relating to all other discovery, would not commence until a decision on the collective action certification question had been made. During the first phase of discovery, Plaintiffs propounded interrogatories and document requests, to which Defendants responded. They also conducted depositions of Defendants Daniel Choi and Pyoung Choi. On September 2, 2014, Defendants filed a Motion for Partial Summary Judgment as to Plaintiff Chitay in which they argued that documentary evidence, specifically biometric timecards and pay ledgers, established that Chitay was properly compensated for his overtime work. Mot. Summ. J. ¶ 3, ECF Nos. 31, 32. Plaintiffs opposed the Motion. ECF No. 33.

On October 3, 2014, after the close of the first phase of discovery, the parties filed, and the Court granted, a Joint Motion to Stay All Deadlines to allow for a period of settlement negotiations. Joint Mot. to Stay, ECF No. 34, 35. On October 21, 2014, the parties filed a Joint

Motion for Approval of Settlement in which they reported that the parties had conducted settlement discussions beginning on or about August 15, 2014. Joint Mot. Approval Settlement ¶ 14, ECF No. 36. After initial discussions did not lead to a resolution, the parties restarted settlement negotiations on October 8, 2014 and exchanged relevant information. *Id.* ¶¶ 14–15. The parties then reached a settlement consisting of the following:

1. Hernandez and De Leon would each receive (a) $15,125.48 in gross wages, minus applicable taxes and deductions; and (b) $15,125.48 in liquidated damages;

2. Chitay would receive (a) 15,102.90 in gross wages, minus applicable taxes and deductions; and (b) $15,102.90 in liquidated damages;

3. Defendants would pay $90,000 to Plaintiffs' counsel for attorney's fees and costs.

*Id.* ¶ 15.

**DISCUSSION**

I.   **Legal Standard**

Congress enacted the FLSA to protect workers from substandard wages and oppressive working hours. *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 739 (1981). Because of the significant inequalities in bargaining power between employers and employees, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). A court-approved stipulated judgment or settlement is an exception to that rule. *See D. A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). Such a settlement may be approved provided that it reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by

an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354; *accord Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013).

Although the United States Court of Appeals for the Fourth Circuit has not specifically identified the factors to be considered in approving FLSA settlements, district courts in this circuit typically employ the considerations set forth by the United States Court of Appeals for the Eleventh Circuit in *Lynn's Food Stores*. *See, e.g., Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010); *see also Saman*, 2013 WL 2949047 at *3; *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010). An FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355. The analysis includes consideration of (1) whether there are FLSA issues actually in dispute; (2) the fairness and reasonableness of the settlement; and (3) the reasonableness of the attorney's fees, if included in the agreement. *Saman*, 2013 WL 2949047, at *3. These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employees are "represented by an attorney who can protect their rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

## II.   FLSA Settlement

### A.  *Bona Fide* Dispute

The first step in analyzing the settlement agreement is determining whether there are FLSA issues that are "actually in dispute." *Saman*, 2013 WL 2949047 at *3. In the Joint Motion for Approval of Settlement, the parties state that "Defendants deny all of the allegations in the Complaint, assert that Plaintiffs were properly paid for all hours worked, including any overtime hours, assert that their pay practices were adopted and implemented in good faith and Defendants did not believe that its pay practices violated the FLSA." Joint Mot. Approval Settlement ¶ 9.

4

They further claim that "their records reflect all overtime hours worked for Plaintiffs and that for all hours listed, Plaintiffs were paid for overtime, at the appropriate rate." *Id.* ¶ 10.

With respect to Hernandez and De Leon, Defendants asserted, during the hearing on this Motion, that they are actually salaried employees who are exempt from FLSA requirements, and that Defendants' records, including biometric timecards that use thumbprint scans to establish entry and exit times from the worksite, establish that Hernandez and De Leon did not work as many hours as they have claimed. Hearing on Joint Motion for Approval of Settlement ("Hearing"), *Hernandez v. Choi*, No. TDC-13-3567, at 9:09:50 a.m. (D. Md. Oct. 30, 2014). Defendants also have not conceded that any violation was willful, which would need to be established in order to allow for recovery of three years of back overtime pay rather than two years, because there is a three-year statute of limitations on willful violations of FLSA and only a two-year statute of limitations on other violations of FLSA. *See* 29 U.S.C. § 255(a).

With respect to Chitay, Defendants have filed a Motion for Summary Judgment as to Plaintiff Chitay, in which they assert that the biometric timecards and a pay ledger that lists the amount paid each week and is signed by employees, establish that Chitay was always paid the proper amount, including overtime, at the hourly pay rates he claims. Defs.' Mem. in Supp. Mot. Partial Summ. J. as to Pl. Chitay at 3–5, ECF No. 31-1. Chitay counters by asserting that these records indicate that the hourly pay rates that he had been told applied to him were actually incorrect, and that his pay did not correlate to consistent hourly pay rates. Mem. Opp. Defs.' Mot. Partial Summ. J. as to Pl. Chitay ("Chitay Opp.") at 3–4, 9–11, ECF No. 33; Chitay Aff. ¶ 7, ECF No. 33-1. The dispute is not easily resolved in part because Defendants paid their employees with a combination of a paycheck and cash payments. Chitay Opp. at 11. Chitay Aff.

5

¶ 3. Thus, there are genuine disputes with respect to all Plaintiffs that support the concept of a negotiated settlement of FLSA claims.

### B. Fairness and Reasonableness

In assessing the fairness and reasonableness of the settlement agreement, the following factors should be considered: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. *Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310 (AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)); *see also Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 3:09–cv–00058, 2010 WL 1813497, at *1 n.1 (W.D. Va. May 5, 2010). Upon consideration of the settlement agreement and the underlying facts, the Court finds that this agreement is fair and reasonable.

The primary factor supporting this conclusion is the probability of Plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. Plaintiffs Hernandez and De Leon each would receive a total of $30,250.96, consisting of $15,125.48 in back wages and $15,125.48 in liquidated damages. Joint Mot. Approval Settlement ¶ 15. Under FLSA, liquidated damages consist of 100 percent of back pay. 29 U.S.C. § 216(b) (stating that liability for unpaid overtime compensation includes "an additional equal amount as liquidated damages"). In this case, the amount of back wages represents a significant percentage of the potential recovery. Plaintiffs alleged that both Hernandez and De Leon worked for Defendant DTI, were paid $14.58 per hour, and worked, on average, 72 hours per week. Am. Compl. ¶¶ 16,

19–20, 22. Hernandez worked for DTI from March 1990 until June 3, 2012. *Id.* ¶ 16. De Leon worked for DTI from 2001 until June 3, 2012. *Id.* Because of the statute of limitations, *see* 29 U.S.C. § 255(a), Hernandez and De Leon acknowledged that the period of employment for which they could seek to recover overtime wages is limited to November 25, 2010 (three years prior to the filing of the Complaint) to June 3, 2012. Hearing at 9:06:45 a.m. Based on these facts, the available recovery for each of these Plaintiffs would be approximately $18,527 in back wages, calculated by multiplying 50 percent of his hourly rate ($7.29) by the number of overtime hours per week (32) and the number of weeks in this time period (79.42).[1] Thus, the settlement provides them with approximately 82 percent of the potential recovery.[2] Given the bona fide disputes at issue in this case, *see supra* Part II. A., this settlement for a high percentage of the potential recovery is fair and reasonable.

Chitay would receive a total of $30,205.81, consisting of $15,102.90 in back wages and $15,102.91 in liquidated damages. Plaintiffs alleged that Chitay worked for Defendant East Greenhill LLC from approximately October 2008 until February 28, 2014, and worked on average 60-70 hours per week. Am. Compl. ¶¶ 20, 25. Plaintiffs alleged that Chitay was paid $7.25 hours through October 6, 2013, $7.88 per hour from that date until October 20, 2013, and $8.15 per hour from that date until October 27, 2013, after which Defendants paid overtime. Am. Compl. ¶¶ 23–25. As with Hernandez and De Leon, the statute of limitations narrows the

---

[1] Because the parties did not provide specific calculations of Plaintiffs' potential recovery, the approximate calculations provided here are those of the Court, based on the figures provided in the Motion. During the hearing on the Motion, the Court verified that its calculations were generally consistent with the parties' analysis.

[2] In the absence of a finding of willfulness, the statute of limitations would bar an additional year's worth of unpaid overtime wages, resulting in a potential recovery of only $6,397. *See* 29 U.S.C. § 255(a).

potential recovery to overtime wages earned from April 23, 2011 (three years prior to the filing of the Amended Complaint adding Chitay as a plaintiff) to February 28, 2014. Based on these facts, the available recovery for Chitay would be approximately $11,912 in back wages, calculated by multiplying 50 percent of his hourly rate by the number of weeks worked under each hourly rate and by the average number of overtime hours per week (25). Thus, the settlement arguably provides Chitay with more than the maximum potential recovery of back wages.[3] During the hearing on this Motion, the parties explained that, because Chitay worked in Maryland, they recognized that he potentially could seek treble damages in a separate action under the Maryland Wage Payment Collection Law, Md. Code Ann., Lab. & Empl § 3–507.2(c) (West 2014), so they viewed his total potential recovery as three times that amount, Hearing at 9:07:32 a.m., or approximately $35,736. By providing him with wages and double damages as provided under FLSA totaling $30,206, the settlement effectively gives Chitay approximately 85 percent of his total potential recovery, including for unfiled state claims. Particularly given that there remains a bona fide dispute whether Chitay is owed back overtime wages at all, *see supra* Part II. A., this amount of potential recovery is fair and reasonable.

The other five factors also support a finding of a fair and reasonable settlement. The settlement was negotiated after the completion of a first phase of discovery focused the issue of class certification, which included interrogatories and document requests to which Defendants responded, as well as depositions of two Defendants, Daniel Choi and Pyoung Choi. This discovery revealed Defendants' time and pay records, which arguably raised questions about Plaintiffs' claims. With the possibility of a motion for a collective action certification, a second

---

[3] Moreover, if the violations were not deemed willful, the statute of limitations would prevent an additional year of overtime wages, resulting in a potential recovery of only approximately $5,012.

8

phase of discovery, and litigation of all claims leading up to a trial, there would be significant time and expense to continued litigation, which provides further support for the reasonableness of a settlement. The agreement was negotiated by experienced counsel over at least two sessions over a three-month period from August to October 2014 and included consideration of the information and documents exchanged among counsel. Joint Mot. Approval Settlement ¶¶ 14–15. Counsel for both parties have recommended this settlement to their clients. Mot. Joint Settlement ¶ 23; Hearing at 9:23:35 a.m. Finally, there is no evidence of fraud or collusion in the settlement. *See Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310 (AJT/JFA), 2009 WL 3094955, at *12 (E.D. Va. Sept. 28, 2009) ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."). Thus, the Court finds the settlement to be fair and reasonable.

### C. Attorney's Fees

If the proposed settlement includes a provision for payment of attorney's fees, the reasonableness of the award must also "be independently assessed, regardless of whether there is any suggestion that a conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Saman*, 2013 WL 2949047, at *3 (quoting *Lane v. Ko-Me, LLC*, No. 10-2261, 2011 WL 3880427, at *3 (D. Md. Aug. 31, 2011)). In this case, the parties negotiated attorney's fees separately from the amount to be paid to Plaintiffs and agreed on an amount of $90,000. Joint Mot. Approval Settlement ¶ 17. To assess this amount, the Court applies the traditional lodestar methodology factors, beginning with a lodestar calculation defined as the number of hours "reasonably expended" by counsel multiplied by a "reasonable hourly rate." *Robinson v. Equifax Info Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009); *Saman*, 2013 WL 2949047, at *6. An hourly rate is reasonable if it is "in line with those prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984). In Appendix B to the Local Rules of the United States District Court for the District of Maryland,[4] this Court has established rates that are presumptively reasonable for lodestar calculations. *See, e.g., Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000).

Plaintiffs' counsel represents that he expended approximately 210 hours on this case. He further represents that his hourly billing rate is $425 per hour, which is at the high end of the guidelines set by this Court for an attorney of his experience, consisting of 17 years as a member of the Court of Appeals of Maryland. Joint Mot. Approval Settlement ¶ 17; *see* Local Rules, Appendix B (D. Md. 2014) (setting a range of $275-425 per hour for attorneys with 15-19 years of experience). Plaintiffs' counsel acknowledges that he had an associate with a lower billing rate assist him with the case, but represented to the Court that the associate's hours would have been additional to these calculations. Hearing at 9:18:50 a.m., 9:22:20 a.m. Thus, a lodestar calculation would be $89,250. He also reports approximately $8,000 in costs, including the cost of the two depositions, which required the retention of Korean interpreters, the filing fee, the cost of multiple attempts at service of process, and travel expenses. *Id.* at 9:16:40 a.m. Plaintiffs' total attorney's fees and costs would therefore be $97,250.

Notably, the agreed upon figure for attorney's fees, $90,000, is approximately the same as the total amount to be provided to the three Plaintiffs, $90,707.73. Put another way, the attorney's fees and costs would be approximately 50 percent of the total settlement. Plaintiffs' counsel has acknowledged that his fee arrangement is a 40 percent contingency fee, but that if attorney's fees are awarded by the Court and actual attorney's fees awarded meet or exceed 40

---

[4] *Available at* http://www.mdd.uscourts.gov/localrules/LocalRules.pdf.

percent of the total recovery, Plaintiffs need not contribute to attorney's fees out of their portion of the recovery. Although Plaintiffs' counsel has not provided detailed billing records, he represented to the Court that the 210 hours represent his actual work on this case. *Id.* at 9:19:30 a.m. These hours included preparation and filing of the Complaint and Amended Complaint, extensive research into the nature and relationship of the various corporate entity defendants, preparation of a response to a Motion to Strike, preparation of interrogatories and documents requests, review of documents received, preparation for and conduct of two depositions, interviews of potential class members, preparation of a Memorandum in Opposition to the Motion for Partial Summary Judgment, and settlement negotiations. *Id.* at 9:14:44 a.m.

Because this case has been actively litigated for almost a year, involved a collective action claim, included depositions and other discovery, and required the research and drafting of memoranda responding to two substantive motions, the Court accepts Plaintiffs' counsel's representations at the hearing regarding attorney's fees, as described above, including that the actual attorney's fees and costs were approximately $97,000. Based on these calculations, the proposed settlement figure of $90,000 for attorney's fees and costs is deemed to be fair and reasonable.

## CONCLUSION

For the foregoing reasons, the Joint Motion for Approval of Settlement is GRANTED. ECF No. 36. A separate Order follows.

Date: November 13, 2014

THEODORE D. CHUANG
United States District Judge